UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

SHELLY SIGLER, )
)
    Plaintiff, )
) No. 1:05-CV-296
v. )
) Chief Judge Curtis L. Collier
AMERICAN HONDA MOTOR CO., INC., )
)
    Defendant. )

## **M E M O R A N D U M**

Before the Court is a motion for summary judgment and supporting memorandum filed by defendant American Honda Motor Company, Inc. ("Defendant") (Court File Nos. 26; 27). Plaintiff Shelly Sigler ("Plaintiff") submitted a response and supporting documents opposing Defendant's motion (Court File No. 31). Defendant filed a reply (Court File No. 37). Defendant also filed motions *in limine* to exclude the testimony of Plaintiff's experts Jacob B. Griffin, III (Court File No. 25) and Danny Bryant and Dr. Randy Heisser (Court File No. 38). Plaintiff timely responded to these motions (Court File Nos. 30; 41). Defendant replied to Plaintiff's briefs (Court File Nos. 36; 42).

After carefully reviewing the above motions and their attachments, for the following reasons, this Court will **GRANT** Defendant's summary judgment motion (Court File No. 26).

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiff is a resident of Bradley County, Tennessee (Court File No. 1-2, ¶ 2). Plaintiff is a wife, a mother, and, at the time of the accident at issue, a student at Cleveland State Community College (Court File No. 31, p. 2). Defendant is a distributor of Honda vehicles in the United States

and allegedly placed the vehicle at issue into the stream of commerce (*id*. at 5).

On September 23, 2004, Plaintiff was driving north on Interstate 75 ("I–75") in Bradley County, Tennessee at a speed of approximately 70 miles per hour ("mph") (*id*. at 2). Plaintiff lost consciousness (*id*.). Plaintiff's vehicle, a 1999 Honda Accord EX (the "Accord") veered off the road, drove down an embankment and through a small wire fence, and hit a tree (*id*. at 3). The tree, approximately six inches in diameter, was uprooted by the collision (*id*.). The Accord was a "certified pre-owned" vehicle equipped with a driver's side airbag, which did not deploy (*id*.). Plaintiff was unconscious at the time of the accident and in a semi-conscious state when she was transported to Bradley Memorial Hospital (*id*. at 4). Plaintiff has been experiencing headaches and seizures since this accident (Court File No. 1-2, ¶ 6). These facts are undisputed.

Plaintiff alleges she struck her head on the interior of the Accord (*id*.; Court File No. 31, p. 4). Plaintiff does not recall the collision but the next day, she noticed a quarter-sized bruise above her left eye (Court File No. 31, p. 4) (citing Dep. D. Sigler 22; Dep. S. Sigler ¶ 6). Plaintiff developed severe headaches, dizziness and neck soreness (which she did not experience before the accident), which caused her to return to the hospital a week after the accident (*id*. at 16; *see also* Court File No. 31-7, Decl. S. Sigler ¶ 3). Plaintiff admits to experiencing a "possible seizure" prior to the accident, but alleges that since the accident, she has been experiencing seizures of aggravated duration and intensity – three *grand mal* episodes per month and three partial complex episodes per week (*id*. at 4). Due to these seizures, Plaintiff cannot drive, had to discontinue nursing school, and is limited in her daily functioning (*id*.).

On September 14, 2005, Plaintiff filed a complaint in the Circuit Court for Bradley County, Tennessee (Court File No. 1-2). Plaintiff asserted three causes of action: (1) strict liability pursuant

2

to § 402A of the Restatement (2d) of Torts; (2) breach of an implied warranty of merchantability; and (3) breach of an implied warranty of fitness (*id*.). On October 25, 2005, Defendant removed the case to this Court on the basis of diversity (Court File No. 1).

A scheduling conference was held March 16, 2006 (Court File No. 9). The parties agreed they would disclose expert witnesses by November 20, 2006, and would provide final witness lists by January 8, 2007 (*id*.). This matter is set for trial on April 16, 2007 (*id*.).

## II.   LEGAL STANDARDS

This action was removed to this Court on the basis of diversity (Court File No. 1). Therefore, this Court applies the substantive law of the state of Tennessee. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1150 (6th Cir. 1988).

### A.   Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden rests on the moving party to conclusively show the absence of a genuine issue of material fact. *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). It is the Court's duty to determine if the non-moving party has presented sufficient evidence to raise issues of fact; the Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986);

3

*Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. (advisory committee notes) (1963). The non-moving party is not entitled to a trial on the basis of its allegations alone. The non-moving party must come forward with significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A scintilla of evidence is not enough; the non-moving party must present enough evidence for a jury to reasonably find for its side. *Anderson*, 477 U.S. at 252. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. At bottom, the moving party is entitled to summary judgment if the non-moving party cannot make a satisfactory showing on an essential element of its case with respect to which it bears the burden of proof. *Celotex*, 477 U.S. at 323.

### B. Tennessee Products Liability Act

As a threshold matter, this Court notes that Plaintiff's complaint alleged three counts against Defendant (Court File No. 1-2). In its motion for summary judgment, Defendant argues that the two breach-of-warranty counts are barred by the statute of limitations contained in Tenn. Code Ann. §§ 29-28-103(a) and 47-2-725 (Court File No. 26, ¶¶ 6-7). In her response, Plaintiff failed to address or counter this claim (*see generally* Court File No. 31). Accordingly, this Court finds Counts Two and Three in Plaintiff's complaint are barred by the applicable statute of limitations and will **DISMISS** these claims with prejudice.

Plaintiff's remaining cause of action sounds in tort, specifically in products liability. In Tennessee, all theories of products liability merge under the Tennessee Products Liability Act of

1978 ("TPLA"), Tenn. Code Ann. § 29-28-101 *et seq*. The TPLA provides, in pertinent part:

> A manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

*Id*. § 105(a). To establish a *prima facie* products liability claim, the plaintiff must show:

(1) the product was defective and/or unreasonably dangerous,

(2) the defect existed at the time the product left the manufacturer's control, and

(3) the plaintiff's injury was proximately caused by the defective product. *King v. Danek Med.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000).

A plaintiff may demonstrate that a product was defective or unreasonably dangerous through direct evidence, circumstantial evidence, or a combination. *Browder v. Pettigrew*, 541 S.W.2d 402, 405 (Tenn. 1976); *Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 299 (Tenn. Ct. App. 1995). The TPLA defines a "defective condition" as a condition rendering a product unsafe for normal use or consumption. *Id*. § 102(2). The TLPA offers two tests for determining if a product is unreasonably dangerous. *Id*. § 102(8); *Ray ex rel. Holman v. BIC Corp.*, 925 S.W.2d 527, 531 (Tenn. 1996). The "consumer expectations" test determines whether a product is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id*.; *see also Jackson v. Gen. Motors Corp.*, 60 S.W.3d 800, 806 (Tenn. 2001) (holding plaintiff must offer evidence of the product's objective condition, after which the jury must employ its own sense of whether the product meets ordinary safety expectations under the circumstances presented by the evidence). A plaintiff may also prove a product is unreasonably dangerous such that a reasonably prudent manufacturer, knowing of the product's dangerous condition, would decline to market the product; this is

5

commonly called the "prudent manufacturer" test. Tenn. Code Ann. § 29-28-102(8); *Ray*, 925 S.W.2d at 531; *see also* Robert P. Murrian, *Tennessee's Prudent Manufacturer Test*, 67 Tenn. L. Rev. 307 (2000).

The fact a plaintiff is injured is not proof a product is defective, *Whaley*, 900 S.W.2d at 299, and "the fact a product malfunctioned, without more, does not impose liability" on the manufacturer, *Harwell v. Am. Med. Sys., Inc.*, 803 F. Supp. 1287, 1298 (M.D. Tenn. 1992). A plaintiff must "trace the injury to some specific error in construction or design" of the product. *Browder*, 541 S.W.2d at 404; *Fulton v. Pfizer Hosp. Prod. Group, Inc.*, 872 S.W.2d 908, 912 (Tenn. App. 1993). Proximate cause is the familiar, negligence-based principle of "cause-in-fact"; to succeed in a products liability action, a plaintiff must demonstrate the injury would not have occurred "but for" the defect. *Wyatt v. Winnebago Indus., Inc.*, 566 S.W.2d 276, 280 (Tenn. Ct. App. 1977).

## III. DISCUSSION

### A. Plaintiff Has Failed to Offer Evidence to Support Finding a Defect in the Accord's Airbag

Again, the test for summary judgment is whether "the party bearing the burden of proof has presented a jury question as to each element of the case." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). If the party fails to establish the existence of an essential element there can be no genuine issue of material fact. *Celotex*, 477 U.S. at 323. In an action under the TPLA, Plaintiff bears the burden of proving a defect in the Accord's airbag. *Higgs v. Gen. Motors Corp.*, 655 F. Supp. 22, 23 (E.D. Tenn. 1985). A defect may be established by circumstantial evidence "only where plaintiff's proof excludes the possibility of other reasonably likely causes . . . This does not mean that the plaintiff must eliminate all other possible causes, but only those other causes which,

based on the record, are reasonably likely." *Allen v. Am. Med. Sys.*, 1989 WL 105626, *3 (Tenn Ct. App. Sept. 15, 1989) (quoting *Motley v. Fluid Power of Memphis, Inc.*, 640 S.W.2d 222, 225 (Tenn. Ct. App.1982)).

> A product is defective if it is not fit for the ordinary purposes for which such articles are sold and used. . . .Establishing this element requires only proof, in a general sense and as understood by a layman, that 'something is wrong' with the product. As a rule the mere occurrence of an accident is not sufficient to establish that the product was [defective, but] . . . additional circumstantial evidence, such as proof of proper use, handling or operation of the product and the nature of the malfunction, may be enough to satisfy the requirement that something is wrong with it . . .
>
> Further, a defective condition can also be proven by the testimony of an expert who has examined the product or who offers an opinion.

*Motley*, 640 S.W.2d at 225 (quoting *Browder*, 541 S.W.2d at 405). Here, Plaintiff has failed to circumstantially show a defect in the Accord's airbag because Plaintiff has offered insufficient evidence to suggest that a defect is the "more probable hypothesis," *id.*, as to why the airbag did not deploy.

To prove a defect in the Accord's airbag, Plaintiff relies on the consumer expectations test (Court File No. 31, p. 7). Plaintiff avers that she knew her vehicle had a driver's side airbag and she purchased it "certified pre-owned," justifying her belief the airbag system was in working order (*id.*). Plaintiff alleges she expected the airbag to deploy (Court File No. 31-7, ¶ 3). For purposes of this decision,[1] the Court would allow Plaintiff to use the consumer expectations test to establish a

---

[1] The Court notes there is a difference in opinion between Plaintiff and Defendant as to whether Plaintiff may use the consumer expectations text to establish a defect. In *Ray ex rel Holman v. BIC Corp.*, 925 S.W.2d 527 (Tenn. 1996), the Tennessee Supreme Court held, "[f]or example, ordinary consumers would have a basis for expectation about the safety of a can opener or coffee pot, but, perhaps, not about the safety of a fuel-injection engine or an air bag." *Id*. at 531. On this basis, Defendant argues the Court should apply the prudent manufacturer test and require Plaintiff to submit expert proof that the airbag was defective (Court File No. 37, p. 3-13).

7

defective airbag, but Plaintiff has not provided evidence the "product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Tenn. Code Ann. § 29-28-102(8); *see also Jackson*, 60 S.W.3d at 805-06 ("a plaintiff is required to produce evidence of the objective conditions of the product as to which the jury is to employ its own sense of whether the product meets ordinary expectations as to its safety *under the circumstances presented by the evidence*"). In the circumstances shown by the evidence here, the ordinary consumer who purchases an Accord would not necessarily expect the airbag to deploy.

Plaintiff cites Defendant's *Supplemental Restraint System* Brochure (the "Brochure"), which states that an airbag should deploy after a 30 mph head-on collision with a solid, stationary object (Court File No. 37, p. 8).[2] However, the Brochure also states, "if a car traveling at the same speed crashes into a smaller or moveable object, the car's speed will be reduced more gradually, and its rate of deceleration may not be high enough to cause the airbags to deploy." (Court File No. 26-2,

---

It seems to the Court that the prudent manufacturer test applies in design-defect cases, and is much less applicable here, in what appears to be a manufacturing-defect claim. Robert P. Murrian, *Tennessee's Prudent Manufacturer Test*, 67 Tenn. L. Rev. 307, 313 (2000) ("Product design claims and product warning claims, as distinguished from manufacturing defect claims, lend themselves to risk-utility analysis more readily than to the consumer expectation test."). Moreover, in *Jackson v. GMC*, 60 S.W.3d 800 (Tenn. 2001), the Tennessee Supreme Court limited *Ray* and expanded the consumer expectations test's applicability. *Id*. at 805 (holding the consumer expectations test "does not depend necessarily on a product's complexity in technology or use . . . [the test applies] to any products liability case in which a party seeks to establish that a product is unreasonably dangerous under Tennessee law").

The Court is not a final authority on Tennessee state law and declines to rule on which test is most proper. In any event the Plaintiff requests application of the consumer expectation test, and the Court finds the Plaintiff has failed to demonstrate legitimate consumer expectations in this case.

[2] However, Plaintiff admitted she did not know what the owners' manual of her Accord said as to when an airbag should deploy (Court File No. 37-2, p. 11-12).

p. 17.) The Brochure specifically states an airbag *may not deploy* if a vehicle impacts a tree.[3] Moreover, the tree Plaintiff impacted was uprooted and was therefore a "moveable object" within the set of circumstances under which an airbag may not deploy and yet still function properly. Even viewing the facts in the light most favorable to Plaintiff and assuming Plaintiff's injuries were caused by the allegedly defective airbag, "there seem to be no damages or dangers beyond [Plaintiff's] contemplation." *Allen*, 1989 WL 105626 at *6; *see also Higgs*, 655 F. Supp. at 26.

The Court concludes (1) the airbag's failure to deploy is not in itself enough to establish a defect, *Harwell*, 803 F. Supp. at 1298, and (2) Plaintiff has presented no direct or circumstantial evidence to establish a defect was the "more probable hypothesis" to explain why the airbag did not deploy, *Motley*, 640 S.W.2d at 225. As explained below, there is no reliable expert testimony to support a conclusion the airbag was defective. In fact, the only expert evidence suggests the airbag was working properly and would not have deployed under the circumstances (Court File Nos. 26-5; 26-6). The burden is Plaintiff's to justify to a jury that her theory "must clearly be the most logical inference to be drawn from the record." *Allen*, 1989 WL 105626 at *6 (citing *Motley*, 640 S.W.2d at 225). To survive summary judgment Plaintiff had to present evidence sufficient for a jury to reasonably conclude the Accord's airbag was defective or unreasonably dangerous. To arrive at such a verdict here, the jury would need to speculate; it could draw no reasonable inferences in favor of Plaintiff because there is no competent or material evidence, direct or circumstantial, upon which

---

[3] Further, the Brochure states, "[c]olliding head-on with a pole or tree is less likely to cause airbag deployment than if you strike the object off-center near harder, more rigid structural parts" (Court File No. 26-2, p. 23). "Someone who views vehicle damage after a crash cannot accurately determine whether or not the airbags should have inflated. Actually, extensive damage to crushable body parts usually indicates that the car absorbed crash energy and reduced the rate of deceleration to the level where the airbags would not have been needed or helpful." (*Id*. at 28.)

9

to conclude the airbag was defective.

> B. **Plaintiff Has Failed to Offer Reliable and Relevant Expert Testimony Compliant with Fed. R. Evid. 702**

As described above, an airbag deploys in some but not all frontal collisions (Court File No. 26-2, p. 9-31), and a reasonable consumer may not justifiably rely on an airbag to deploy when his vehicle collides with a moveable object. In addition to the consumer expectations test, to establish a defect, Plaintiff relied on the testimony of an expert, Jacob B. Griffin, III ("Griffin") (Court File No. 31, p. 9; *see also* Court File No. 26-2). Griffin is an accomplished mechanic who consults for the Hamilton County District Attorney's Office (*id*. at 10). In rendering his evaluation and in the absence of the Accord,[4] Griffin relied on the accident report, a tour of the scene, photos, "information on the supplemental restrain system provided by Honda" (presumably the Brochure), and Plaintiff's testimony (Court File No. 26-2, p. 3). Griffin determined that Plaintiff hit the tree almost head-on and at a speed of 30–40 mph, "certainly a rate of speed high enough to expect the airbag to deploy" (*id*.). Griffin's report states:

> It is my duty to conclude that the driver's airbag should have deployed in this case at the instant the vehicle struck the tree. Why it did not would involve pure speculation without the vehicle to inspect. It can, however, be narrowed down to a short list of possibilities: a faulty crash sensor, a faulty SRS control module (computer), a faulty airbag or simply a design flaw in the operational software algorithms.

(*Id*. at 4.) Defendant challenges the admission of Griffin's report (Court File No. 25). Defendant demands the Court perform its "gatekeeping" role under Rule 702 of the Federal Rules of Evidence,

---

[4] According to Griffin's report (Court File No. 26-2), he would have performed a full "vehicle autopsy" on the Accord, per his usual practice, to determine why the airbag did not deploy (*id*. at 1). However, the Accord was totaled and salvaged by Plaintiff's insurance company (Court File No. 31-7, ¶ 8).

as interpreted by the United States Supreme Court in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 ("Rule 702"). In *Daubert*, the Supreme Court set forth guidelines for interpreting this Rule. The bottom-line standard for a district court is to make certain that all expert testimony admitted into evidence is "not only relevant, but reliable" and will ultimately assist the jury in understanding and resolving the case's main issues. *Id.* at 589; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (applying *Daubert* to technical and subject-matter experts). The party proffering an expert who is challenged bears the burden of proving such expert's admissibility. *Id.* at 592 n.10; *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997). This can be a heavy burden and as the Sixth Circuit has made clear, "it is simply not reasonable after *Daubert* for a party initially to present 'less than [her] best expert evidence in the expectation of a second chance' to 'shore[] up' her case after her expert testimony is ruled inadmissible." *Pride v. BIC Corp.*, 218 F.3d 566, 677 (6th Cir. 2000) (citing *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000)).

A district court enjoys considerable leeway in ruling on the admissibility of a particular expert's opinion. *Kumho Tire*, 526 U.S. at 141. A court's inquiry should focus solely on principles and methodology and not on the conclusions generated. *Daubert*, 509 U.S. at 595. The court's Rule

702 inquiry is not intended to replace the adversary process. *Id*. To reiterate, the main goal of a district court is to ensure the expert's opinion is grounded in reliable principles and will be relevant and useful to the jury. "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir.1998).

Defendant contends Griffin is unqualified to offer an expert opinion regarding the Accord's speed and the change in its velocity (the "delta-V") when it impacted the tree. The Court agrees. As Rule 702 states, to qualify as an expert a witness must first establish his credentials by reference to his knowledge, skill, experience, training, or education. Though "this requirement has always been treated liberally" it "does not mean that a witness is an expert simply because he claims to be." *Pride*, 218 F.3d at 677 (internal citations omitted). Nothing in Griffin's resume, education, or training suggests he is qualified to offer an expert opinion on a defect in the Accord's airbag *without actually inspecting it*. Griffin's resume suggests he would have been admissible and well-qualified to perform an automobile autopsy per his typical practice. Here, Griffin has been asked to perform the duties of an airbag engineer and to testify about how the airbag should have worked. Griffin is clearly an expert mechanic, but his qualifications do not suggest he is an expert in physics, accident reconstruction, or airbag engineering. It is the Court's role to decide if Griffin's testimony has a sufficiently reliable basis to assist the jury in understanding evidence or in finding a disputed fact; the Court concludes Griffin's testimony is not any more helpful than a lay-person's because he has not identified special knowledge in the areas of dispute here – the speed/delta-V of the Accord when

it hit the tree and the circumstances of the tree as a potentially moveable object.[5]

Moreover, as nothing in Griffin's resume suggests an expertise in accident reconstruction,

---

[5] To overcome this deficiency, Plaintiff and Griffin state he consulted with Danny Bryant ("Bryant"), a former Virginia State Police Officer who received an accident reconstruction certification from the Transportation Safety Training Center at Virginia Commonwealth University (*e.g.*, Court File No. 31-6, ¶ 7). Defendant objects, noting Bryant has never been disclosed as an expert, the time for disclosure of expert testimony has passed (the deadline was November 20, 2006) (Court File No. 38). Defendant also argues it inequitable to permit Plaintiff to utilize the opinion of an undisclosed "expert" because Defendant has had no opportunity to explore the basis for such expertise or opinion (Court File No. 38).

Plaintiff's response argues that experts often rely on ths work of other experts, and cites cases which support this statement. However, the cases cited by Plaintiff are inapposite to this dispute, as they are based in Fed. R. Evid. 701 and 703. Moreover, Plaintiff fails to grasp the main objection to Griffin relying on Bryant – Griffin's expertise is in auto mechanics, but he is attempting to testify on a matter of accident reconstruction and physics. Plaintiff cites *Dura Auto. Sys. of Ind. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002) in support of her position; *Dura Auto* is helpful in making the point as to experts testifying *in their respective disciplines*:

> The *Daubert* test must be applied with due regard for the specialization of modern science. A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science. A theoretical economist, however able, would not be allowed to testify to the findings of an econometric study conducted by another economist if he lacked expertise in econometrics and the study raised questions that only an econometrician could answer. If it were apparent that the study was not cut and dried, the author would have to testify; he could not hide behind the theoretician.

*Id.* at 614.

Fed. R. Civ. P. 26(a)(2)(B) provides, in part, that a party's disclosure regarding an expert witness must "contain a complete statement of all opinions to be expressed and the basis and reasons therefor." In the initial report (disclosed pursuant to Rule 26) Griffin did not mention his reliance on Bryant. As expressed by the Sixth Circuit in construing Fed. R. Civ. P. 26 and 37(c)(1), "a party who 'without substantial justification fails to disclose information required by Rule 26 . . . shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." *King v. Ford Motor Co.*, 209 F.3d 886, 901 (6th Cir. 2000). In *King*, the court denied the party who had not fully complied with Rule 26 to rely on the proffered expert's testimony. The Court finds such sanction appropriate here, and will not permit Griffin to rely on Bryant. Again, Griffin is not an accident reconstructionist – this is key – and may not testify as such. Griffin's report is inadmissible as unreliable under the Rule 702/*Daubert* analysis above.

this Court questions whether the inputs (the angles of the vehicle, its speed) which went into his ultimate conclusion (the airbag should have deployed) are based on sufficient facts or data. This is the first enumerator factor in determining expert admissibility under Rule 702. Griffin's report does not indicate if he has done any type of testing or reconstruction efforts to support his opinions related to the vehicle's speed. Defendant argue Griffin relied too heavily on post-crash photographs of the Accord to conclude "the car most likely impacted the tree at 30–40 miles per hour" (Court File No. 25, p. 5). From the wording of his report, there is no evidence Griffin undertook any mathematical or engineering calculations or compared the crash data in this case to crash data of similar vehicles or accidents (*id*.). While this is true, the Court sees in Griffin's subsequent declaration (Court File No. 31-6), some evidence of calculations and comparative analysis was provided. But Rule 702 requires an expert's opinion to be "the product of reliable principles and methods;" neither Griffin's two-page opinion (Court File No. 26-2) nor his three-page declaration (Court File No. 31-6) describe any methodology. Because the methodology is unclear, there is no evidence that his "method" has been tested and accepted in the relevant field. *See Caldwell v. Gen. Motors Corp.*, 2005 U.S. Dist. LEXIS 25574, *6-9 (M.D. Ga. 2005). The only statement provided is cursory: "applying generally accepted accident reconstruction principles." (Court File No. 31-6, p. 2-3.) This Court is tasked with a gatekeeping role and with determining whether generally accepted principles and methods have been employed. An experts assertion is not sufficient without detail as to those principles and methods and the basis for their "general acceptance." And again, without data or explanation to support Griffin's conclusion it is difficult to assess the "known or potential rate of error," whether there is a standard for evaluation, or whether the methodology is generally accepted.

In short, stricken of its findings as to the velocity at which the Accord struck the tree, Griffin's report does not assist the trier of fact, as required by *Daubert*. Because Griffin's report fails a reliability determination under *Daubert* and Rule 702, it may not be relied on by Plaintiff to oppose summary judgment. *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001).[6]

### C.   Even Assuming a Defect, Plaintiff Has Failed to Establish Causation

As stated above, Plaintiff has not proved the Accord's airbag was defective by either circumstantial or expert evidence. This Court also concludes Plaintiff has failed to establish the element of proximate cause.

Plaintiff asserts a "crashworthiness" claim against Defendant, alleging a "second collision" when her head struck the Accord's interior:

> This second collision was proximately caused by the air bag failing to deploy. In summary, the vehicle was not fit for its intended purpose in that its air bag failed to deploy in a severe frontal impact (a 30–40 mile per hour frontal impact with a tree).

(Court File No. 31, p. 9.) But Plaintiff offered no evidence connecting this second collision to her alleged injuries, and most importantly, to her *enhanced injuries*. *Whitehead v. Toyota Motor Corp.*, 897 S.W.2d 684, 694 (Tenn. 1995) (applying comparative fault principles to products liability/

---

[6] It should also be noted that the only unchallenged expert evidence in this matter suggests the airbag was working properly and would not have deployed under the circumstances presented by the evidence (Court File Nos. 26-5; 26-6). Defendant's expert Charles E. Bain ("Bain"), an engineer and medical doctor, reviewed the same evidence as Griffin as well as medical records from Bradley County EMS, Bradley Memorial Hospital, and Plaintiff's treating physicians (Court File No. 26-5, p. 2). Bain's report concludes (1) "the airbag was not designed to fire at this low delta V," (2) there was no evidence Plaintiff did or could have struck her head on the Accord's interior, and (3) there was no evidence Plaintiff was injured in the impact (*id*. at 3-4). Defendant's expert Alfred E. Kirkland, a Honda "technical specialist," opined (briefly) "the damage is inconsistent with a frontal collision of 30 MPH." (Court File No. 26-6, p. 1.) These expert reports were offered to challenge Griffin's opinion and to assist the Court in evaluating the underlying facts and methodology he employed.

15

enhanced injury cases; holding the "respective fault of the manufacturer and of the consumer should be compared with each other with respect to all damages and injuries for which the fault of each is a cause in fact and a proximate cause"); *O'Bryan v. Volkswagen of Am.*, 1994 WL 599450, *5 (6th Cir. 1994) ("[i]n crashworthiness cases, courts deny recovery unless the plaintiff establishes, by competent expert testimony, that the defect was responsible to some degree for enhancement of injury to the plaintiff"). Plaintiff does not allege Defendant was responsible for her initial collision with the tree. Because Plaintiff is alleging injuries from a second collision (caused by the airbag malfunction) Plaintiff must prove (1) how her injuries were enhanced by this second collision, or (2) how her injuries could have been avoided if the airbag had deployed. *See Pride*, 218 F.3d at 677.

To this end, Plaintiff initially offered no evidence. The complaint fails to mention Plaintiff's seizures and only states Plaintiff "suffered extensive injuries, including, but not limited to, head trauma resulting from striking her head on the interior of her motor vehicle" (Court File No. 1-2, ¶ 6). Griffin's report does not connect the airbag malfunction to Plaintiff's injuries.[7] In fact, the first

---

[7] Defendant appears to question whether Plaintiff hit her head at all during the accident:

> Heisser bases his opinion not only on the speed of the vehicle at the point of impact, but also upon the assumption "that Mrs. Sigler's head struck the interior of the vehicle during the collision[.]" However, there is absolutely no evidence in this case that Ms. Sigler's head struck any part of the subject vehicle's interior. Mr. Griffin does not attempt to offer an opinion that Ms. Sigler's head struck the interior of the subject vehicle, nor does Dr. Heisser. Furthermore, Ms. Sigler herself cannot state that her head struck the interior of the vehicle as she was not conscious at the time of the impact and has no recollection of the impact. . . . There is no evidence in the medical records in this case that Ms. Sigler's head struck the interior of the vehicle and no evidence that there was contact with the interior of the car to cause epileptic seizures or worsen pre-existing epileptic seizures.

(Court File No. 38, p. 9-10.) However, Defendant does not raise this point in its motion for summary judgment or its reply; Defendant appears willing to concede this point to avoid raising a fact issue while simultaneously and consistently contesting there is no evidence the alleged defect

16

time causation is really mentioned is in the summary judgment motion and the Plaintiff's response. Defendant argued Plaintiff failed to establish a causal connection between the defect and her injuries, and also cited *Smith v. General Motors Corp.*, 376 F. Supp. 2d 664 (E.D. Va. 2005) (construing Tennessee law), for the proposition "[i]n a case such as this one, where [Plaintiff] suffered complex [] injuries, Tennessee law requires a plaintiff to produce expert medical testimony to establish the causal connection between the alleged defect and the plaintiff's injuries." (Court File No. 27, p. 17.) Defendant attached the medical report of Dr. Berta Bergia ("Bergia"), who reviewed 309 pages of medical records and opined "within a reasonable degree of medical certainty that the motor vehicle accident . . . had no significant impact on [Plaintiff's] subsequent seizures" and "[i]t is medically un-likely that the motor vehicle accident . . . had any significant impact on [Plaintiff's] epilepsy" (Court File No. 26-4).

Upon Defendant raising this issue Plaintiff offered two arguments. First, Plaintiff alleges her injuries (concussion, bruising, severe headaches, neck pain, and dizziness) are "simple or routine" and need not be established by expert testimony under Tennessee law (*id*. at 15). Second, Plaintiff filed a supplemental report and disclosed Dr. Randy Heisser ("Heisser") as an expert, who opined:

> Assuming that Mrs. Sigler's vehicle was traveling at least 20 miles per hour when it struck the tree, and further assuming that Mrs. Sigler's head struck the interior of the vehicle during the collision, within a reasonable degree of medical certainty, such trauma to the head more than likely aggravated or exacerbated her preexisting seizure disorder.

(Court File No. 31, p. 14). Defendant challenges Heisser's report as inadmissible under Rule 702

---

proximately caused seizures or the worsening of pre-existing seizures.

and as untimely disclosed.[8] It should be noted, Heisser is not Plaintiff's treating physician but was retained as an expert to assess the causal connection between the accident and the Plaintiff's injuries. Moreover, he relied on Griffin's report to assess the speed of Plaintiff's collision, which report the Court has already found unreliable. The Court agrees with Defendant's argument that there is no evidence in the record to support the assumptions upon which Heisser bases his opinion (there is, specifically, no evidence as to the Accord's speed at the time of collision). Therefore his testimony

---

[8] Plaintiff also vigorously resists Defendant's effort to exclude Heisser under Fed. R. Evid. 702 or as untimely disclosed, arguing Defendant has "unclean hands" because Plaintiff agreed to extend the expert disclosure deadline for Defendant's benefit but Defendant's counsel did not follow through in its agreement to recommend mediation to Defendant (Court File No. 41). Defendant just as vigorously refutes this assertion, stating (1) Plaintiff did not willingly or benevolently grant the extension for Defendant's expert disclosures but required a *quid pro quo* of counsel's pledge to discuss mediation with Defendant, which counsel asserts was done and communicated to Plaintiff; (2) Defendant communicated well in advance to Plaintiff the need to extend the expert disclosure deadline, which Plaintiff agreed not to object to, whereas Plaintiff gave Defendant no notice of the delay in disclosing Heisser; (3) Plaintiff bears the burden of proof and Defendant can only prepare its case in anticipation and reaction to what Plaintiff discloses, which renders admission of a surprise expert unfair; and (4) even if Heisser is a true rebuttal witness, his disclosure was untimely (Court File No. 42).

The Court understands that in the stress of trial preparation attorneys can say or do things that they would not say or do in less stressful times. That is one of the reasons that in a profession civility is so important. This Court places a high premium on civility and co-operation between parties. The Court finds noteworthy Defendant's point that Plaintiff's disclosure of Heisser's report came three months after the close of expert discovery, without prior notice to Defendant, and more than 30 days' after the disclosure of Bergia's report (*see id.*). The Court does not look favorably on unsupported allegations of "unclean hands." Such language should only be used in the most egregious cases. This is not such a case. The Court takes its deadlines seriously and is willing to respect agreements between the parties granting deadlines extensions but does not appreciate late filing absent such agreement (and notwithstanding the purpose behind such agreement).

The Court has discretion to accept and review or to reject an untimely filed expert disclosure. Fed. R. Civ. P. 16; *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1446 (6th Cir. 1993). The importance of the untimely filed evidence should be considered. *Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 753 (6th Cir. Mar. 6, 2003). Heisser's report is important to Plaintiff's case, so the Court has considered it. However, the Court believes summary judgment is appropriate because Plaintiff has failed to sufficiently establish proximate cause as required by Tennessee law.

is irrelevant and unreliable under Fed. R. Evid. 702 as interpreted by *Daubert* and its progeny.

Even if the Court was to accept Heisser's conclusion, Plaintiff misses the point of her crashworthiness claim. Plaintiff argues she was injured as a result of her accident, but she fails to distinguish between the injuries attributable to colliding with a tree and the injuries attributable to the airbag's alleged malfunction. First, Plaintiff offers no competent reconstruction of the collision with the tree. She admits she was unconscious during the accident and so cannot testify first-hand as to a second collision. The only evidence she proffers is her own circumstantial statement that she developed a bruise the day after the accident. However, Defendant has offered an expert rebuttal averring that a second collision would not have occurred under the speed, delta-V, and conditions of the accident (Court File No. 26-5). Heisser's declaration would not aid the jury in resolving an issue of fact in this case because it is based on the hypothesis that Plaintiff struck her head on the Accord's interior, but this hypothesis has not been supported by facts in the case; it ignores other possible scenarios, such as injury from the initial collision with the tree.

Moreover, in the medical records submitted by Plaintiff herself (Court File No. 31-8), the Court notes the prominent diagnosis of "seizure" but there is no note or diagnosis of head trauma related to a second collision during the accident. Prior to the declaration by Heisser, Plaintiff admitted no medical doctor had told her that hitting her head had complicated her seizure disorder (Court File No. 31-2, p. 21). Again, Defendant offered the evidence of two medical doctors that Plaintiff's injuries did not proximately result from a second collision, or even from the primary.

The Court determines Plaintiff's evidence as to proximate cause is deficient in three respects:

(1) Plaintiff has offered little to support finding a second collision occurred.

(2) Assuming the second collision did occur, Plaintiff has offered little to support finding her

19

injuries were caused or enhanced by such second collision. There is nowhere in Plaintiff's proof any statement separating the impact with the tree from the alleged impact with the Accord's interior.

(3) Plaintiff has not attempted to demonstrate how her injuries would have been different or avoided if the airbag had deployed. Plaintiff's own evidence acknowledges she had a seizure three weeks' prior to the accident and the hospital records suggest she had a seizure which caused the accident. Plaintiff has not presented competent medical testimony separating the pre-existing seizure disorder from the allegedly aggravated disorder Plaintiff is currently experiencing.

In sum, viewing Plaintiff's claim in the most favorable light, even while accepting as true the allegation Plaintiff hit her head, the Court concludes Plaintiff has presented only a "mere scintilla" of evidence proximately connecting a product defect with an injury. There is no genuine issue of material fact to present to a jury and there is insufficient evidence for a jury to reasonably find for Plaintiff as to the establishment of the element of proximate cause. *Anderson*, 477 U.S. at 252.

## IV. CONCLUSION

For the foregoing reasons, this Court finds summary judgment appropriate in this case and accordingly will **GRANT** Defendant's motion (Court File No. 26), as well as Defendant's motion to exclude the testimony of Plaintiff's expert Jacob B. Griffin, III (Court File No. 25).

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**